*Paul B Swz*

Undersigned Assistant U.S. Attorney has
reviewed the entire search warrant package
and approves it.

## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNT PFLICK@PREMIUMSERVICEBRANDS.COM THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC | Case No.    3:23-mj-00014 |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Mark Ericksen, a Special Agent with the Federal Bureau of Investigation being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with the email account pflick@premiumservicebrands.com, "the Target Account," that is stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheater Parkway, Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.     I am a Special Agent of the FBI and have been so employed since January 2020.

I attended and graduated the FBI Academy in Quantico, Virginia. During my 20 weeks at the Academy, I received training on federal criminal procedure and investigative techniques to include interviewing witnesses and subjects, physical and electronic surveillance, data analysis, undercover operations, and human source development and operation, among others.

3.     After completing the FBI Academy, I was assigned to the Baltimore Division where I investigated violent crimes, among other violations of the federal criminal code.

4.     I have conducted investigations relating to murder for hire, narcotics trafficking, violent crimes against children, and healthcare fraud, and I have monitored Title III wires.

5.     In 2022, I transferred to the Richmond Division and am assigned to a squad that investigates domestic terrorism and assists other squads with other federal criminal investigations to include financial frauds.

6.     The statements contained in this affidavit are based in part on information provided by other federal agents and state law enforcement officers; written reports about this and other investigations that I have received; the results of interviews conducted by law enforcement; independent investigation and analysis by law enforcement agents/analysts; and my experience, training, and background as a Special Agent.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C §§ 1343 (wire fraud) have been committed by Paul Flick. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

2

## JURISDICTION

8.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. § 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9.     Premium Service Brands is a Limited Liability Company located in Charlottesville, Virginia, within the Western District of Virginia. The website is: premiumservicebrands.com. Premium Service Brands is a franchisor of nine (9) franchises: 360 Painting, ProLift Garage Doors, Maid Right, Kitchen Wise & Closet Wise, Renew Crew, Rubbish Works Junk Removal, The Grout Medic, House Doctors, and Rooterman. Paul Flick is the owner and Chief Executive Officer of Premium Service Brands.

10.     AE Capital is a Limited Liability Company located, in Charlottesville, Virginia, within the Western District of Virginia. The website is: aecap.net. The website describes the company as a "boutique private capital firm focused on the home service industry" and lists the email address: pflick@aecap.net and the telephone number: 703-622-0109,

Paycheck Protection Program

11.     The Paycheck Protection Program (PPP) established by the CARES Act, was implemented by the Small Business Administration with support from the Department of the

Treasury.  This program provided small businesses with funds to pay up to 8 weeks of payroll costs including employee benefits. Funds could also be used to pay interest on mortgages, rent, and utilities.

12.     According to treasury.gov, "The Paycheck Protection Program prioritized millions of Americans employed by small businesses by authorizing up to $659 billion toward job retention and certain other expenses. Small businesses and eligible nonprofit organizations, Veterans organizations, and Tribal businesses described in the Small Business Act, as well as individuals who are self-employed or are independent contractors, were eligible if they also met program size standards."

13.     Per the Department of Treasury Fact Sheet, "PAYCHECK PROTECTION PROGRAM (PPP) INFORMATION SHEET: BORROWERS", borrowers were only permitted to take out one loan under the Paycheck Protection Program.

<u>PPP Loan Applications</u>

14.     Between April 4-16, 2020, Premium Service Brands and AE Capital both applied for PPP loans through Bank of America and Citizens Bank, respectively.

<u>Premium Service Brands Application to Bank of America</u>

15.     Between the dates of April 4 and 15, 2020, Premium Service Brands submitted three (3) Paycheck Protection Program loan applications to Bank of America, an FDIC insured institution.  Each application requested $520,383 in loan funding.

16.     The three (3) loan applications were essentially identical with minor differences. Each application listed Premium Service Brands with the Business TIN of 473476328 and the

4

business address of 630 Peter Jefferson Parkway, Suite 200, Charlottesville, Virginia, 22911.

Throughout each application, Paul Flick was listed with 100% ownership of Premium Service

Brands.

17.     On April 3, 2020, the first Premium Services loan application (application

reference number (ARN) 4106233942)  was completed and signed by Paul Flick. The email

address pflick@premiumservicebrands.com (TARGET ACCOUNT) was listed on the

application under contact information for Paul Flick.

18.     On April 4, 2020, the second Premium Services loan application, ARN:

4106358521, was completed and signed by Paul Flick. pflick@premiumservicebrands.com was

listed on the application under contact information for Paul Flick.

19.     On April 15, 2020, the third Premium Services loan application, ARN:

4106941968, was completed and signed by Barbara Myer. Both the email addresses

pflick@premiumservicebrands.com and bmyer@premiumservicebrands.com were listed on the

application under contact information.

20.     I am unaware of why Premium Service Brands submitted three (3) applications.

On May 15 and 20, 2020, Bank of America provided Paul Flick with two letters stating two of

the three (2/3) duplicate applications were being closed.

21.     On all three (3) of the loan applications, including ARN 4106358521, which was

ultimately granted, Paul Flick answered "Yes" to the following: "During the period beginning on

February 15, 2020 and ending December 31, 2020, the Applicant has not and will not receive another loan under this program".

22.     On May 1, 2020, Bank of America issued a Promissory Note to Premium Service Brands confirming the loan amount of $370,117.00.  On May 4, 2020, a Bank of America account ending in 2757 (BOA-2757) received a deposit of $370,117.00 with the description: "CARES ACT PAYCHECK PROTECTION PROGRAM DEPOSIT".   This account was titled in the name of AE CAPITAL, LLC.

<u>Target Account</u>

23.     Pursuant to a federal grand jury subpoena, Google returned the following subscriber information for pflick@premiumservicebrands.com: Google Account ID: 550332403578, Name: Paul Flick, Email: <u>pflick@premiumservicebrands.com</u>, Additionally, the alternate emails <u>pflick@aecap.net</u> and info@aecap.net <u>were connected to this Google account ID..</u> The account recovery telephone number was listed as 703-622-0109, the same telephone number listed for Paul Flick on aecap.net.

<u>AE Capital Application to Citizens Bank</u>

24.     On April 16, 2020, Paul Flick utilized "DocuSign[1]" with email address: pflick@aecap.net to sign and submit a PPP loan application to Acclivity Financial (a subsidiary

---

[1] Per DocuSign's website: Document-signing software is technology that lets you sign documents online. It uses an electronic signature and requires no paper or printing, scanning or faxing of documents. DocuSign eSignature is document signing software that allows the user to legally—and securely—collect approvals online.

of Citizens Bank) for AE Capital, requesting $520,383 in loan funding.  As discussed above, this is the same amount Flick applied for through Premium Services Brands.

25.     The application also listed AE Capital as located at 630 Peter Jefferson Parkway, Suite 200, Charlottesville, Virginia, 22911, the same address and suite as Premium Service Brands. The application listed Paul Flick as the 100% owner of AE Capital. Paul Flick was designated as the primary contact for the loan application and listed the email address pflick@aecap.net.

26.     AE Capital is listed as the 100% member of Premium Service Brands as well as the 100% member of other entities.

27.     On the Citizens Bank Borrower Application Form for AE Capital, Paul Flick electronically signed his initials, confirming "During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program."

28.     A federal grand jury subpoena was served on GoDaddy, LLC for the subscriber information for pflick@aecap.net.  Responsive information is pending. .

29.     The loan application listed  703-622-0109, the the recovery telephone number for the TARGET ACCOUNT.

30.     On April 27, 2020, the Small Business Administration approved loan number 4341027203 authorizing a loan in the amount for $505,255 for AE Capital, LLC.

31.     On April 28, 2020, Paul Flick utilized DocuSign to sign SBA Form 1050, U.S. Small Business Settlement Sheet, acknowledging and confirming SBA Loan 4341027203 in the amount of $505,255 for AE Capital, LLC.

32.     On April 28, 2020, BOA-2757, i.e. the  account into which Bank of America deposited the PPP loan for Premium Service Brands, received a wire transfer deposit of $505,255 from Citizens Bank.

33.     On April 22, 2020, Paycheck Protection Program Loan Credit Memorandum was issued which detailed the terms of the AE Capital Loan. The Memorandum detailed the Maximum Loan Amount of $505,255, with an Approved Loan Amount of $505,200. Seventy-five percent (75%) of that loan amount, or $378,900, must be used for payroll while twenty-five percent (25%), or $126,300, must be used for other eligible expenses.

Duplicative Loan Documents

34.     I have reviewed the loan applications for Premium Service Brands and AE Capital and identified examples of duplicative documents used in both loan applications. Furthermore, I have identified identical employees attributed to both companies, during shared time periods. Specifically, Premium Service Brands and AE Capital submitted many of the same federal tax returns, payroll documents, employee ledgers, and lease documents to support their PPP loan applications. In addition, many of the documents submitted in support of AE Capital were attributed to Premium Service Brands and did not bear any markings for AE Capital.  In addition,

the AE Capital loan application did not include new documents showing additional employees or leases for the other companies that AE Capital wholly owned.

35.     More specifically, seven (7) identical documents tax documents were identified in both PPP loan applications. The first document was a sixty-five (65) page tax package compiled for Premium Service Brands by S&W Payroll Services LLC, 1155 Highway 190, E Service Road, Suite 200, Covington, Louisiana. The Company Package contained copies of tax returns filed on behalf of Premium Service Brands for Quarter 3, 2020. The identical information was submitted for AE Capital.

36.     The same five (5) Quarterly Federal Tax Returns in the name of Premium Service Brands were also submitted for both Premium Service Brands and AE Capital (federal tax returns for Quarters 1-4 of 2019, and Quarter 1 of 2020). In addition to duplicative federal tax returns, Premium Service Brands and AE Capital both submitted identical Virginia Employment Commission – Employer's Quarterly Tax Reports which listed the same thirty-four (34) Premium Service Brands employees.  (These tax documents listed 34 employees while the loan applications claimed 41; the reason for this discrepancy is not clear.)

37.     Nine (9) identical lease documents were identified in both PPP loan applications. Four (4) of the documents contained lease and sublease packages/agreements between PJP Properties and Premium Service Brands. In addition to the duplicative lease documents, five (5)

identical sublease invoices for April through August of 2020 ($5,602.42/month) were submitted for both Premium Service Brands and AE Capital PPP loan applications.

38.     The email address pflick@aecap.net was also provided on the lease documents for Premium Service Brands lease agreement.

39.     The two PPP loan applications also included ten (10) identical payroll documents. Additionally, many other documents submitted reflected the same information in differing format; therefore, not identical, but representing the same material information.

40.     I reviewed copies of checks submitted for Premium Service Brands and identified twenty-one (21) identical checks submitted to both Bank of America and Citizens Banks in the two PPP loans. The checks were dated after the original PPP loan application. For this reason, I believe the checks were submitted to support loan forgiveness applications, and not the original applications.

41.     On February 21, 2023, I interviewed Scott Hammerbacher, Senior Vice President of Loan Administration at Citizens Bank. Hammerbacher spoke with the underwriter of the loan who explained that the AE Capital loan was approved for AE Capital, utilizing Premium Service Brands supporting documents, because the Applicant claimed that Premium Service Brands was 100% owned by AE Capital. Hammerbacher stated that if the bank had been made aware that the Premium Service Brands supporting documents had previously been submitted for a separate

PPP loan, it would have affected the approval of the AE Capital PPP loan. Using the same supporting documents to receive separate loans would be considered duplicating applications.

PPP Loan Forgiveness

42.     Per the Treasury Department's website, The SBA implemented a PPP loan forgiveness for borrowers. The program outlined that borrowers may be eligible for loan forgiveness if the funds were used for eligible payroll costs, payments on business mortgage interest payments, rent, or utilities during either the 8- or 24-week period after disbursement. A borrower could apply for forgiveness once it had used all loan proceeds for which the borrower was requesting forgiveness. Borrowers could apply for forgiveness any time up to the maturity date of the loan. If borrowers did not apply for forgiveness within 10 months after the last day of the covered period, then PPP loan payments are no longer deferred, and borrowers were required to begin making loan payments to their PPP lender.

43.     Borrowers were required to produce i) bank account statements or third-party payroll service provider reports documenting the amount of cash compensation paid to employees ii) tax forms (or equivalent third-party payroll service provider reports) for the periods that overlap with the Covered Period or the Alternative Payroll Covered Period and iii) payment receipts, cancelled checks, or account statements documenting the amount of any employer contributions to employee health insurance and retirement plans that the borrower

included in the forgiveness amount. Borrowers were also required to produce non-payroll documentation such as rent, lease, and mortgage statements.

BANK OF AMERICA LOAN FORGIVENESS

44.     On March 2, 2021, Bank of America issued a letter to Premium Service Brands, LLC., notifying the company that the Small Business Administration (SBA) determined that the borrower requested forgiveness on the PPP Loan was fully approved and the SBA remitted the forgiven amount to Bank of America

AE CAPITAL LOAN FORGIVENESS

45.     After completing the wire transfer from Citizens Bank to AE Capital, on January 22, 2021, Acclivity Financial created a PPP Loan Forgiveness Application and emailed it to bmyer@premiumservicebrands.com. On the same day, bmyer@premiumservicebrands.com viewed, completed, and signed the application.

46.     On February 5, 2021, Paul Flick sent an email to pppforgiveness@acclivityfinancial.com, which initiated the following email correspondence:

47.     02/05/2021 at 0559; Paul Flick <pflick@aecap.net> to PPP Forgiveness <pppforgiveness@acclivityfinancial.com>: "Good Morning! I was hoping to get the status of my PPP loan forgiveness application. Thank you in advance! -- Paul Flick Premium Service Brands CEO O: 703.622.0109 www.premiumservicebrands.com"

48.     02/05/2021 at 0954; <pppforgiveness@acclivityfinancial.com> to <pflick@aecap.net>: "Good Morning Paul, It looks like we submitted your application to the SBA on January 22, 2021. It takes about 40 days to get an status update from the SBA. Could be

12

faster, could be longer. There appears to be no rhyme or reason. We will let you know as soon as we hear something from the SBA. I hope you have a great weekend! Mike"

49.     03/08/2021 at 1709; Paul Flick <pflick@aecap.net> to PPP Forgiveness <pppforgiveness@acclivityfinancial.com>: "Mike, I trust this email finds you well. Any update on the PPP Loan Forgiveness Application? Thanks for your time!"

50.     03/08/2021 at 1718; <pppforgiveness@acclivityfinancial.com> to <pflick@aecap.net>: "Good Afternoon Paul, I just check the PPP Forgiveness site and there is no update. Unfortunately the SBA will not comment on status, so the only thing we can do is wait. We will let you know as soon as we hear something! mike Mike Callaghan SVP, Director of Technology"

51.     03/08/2021 at 1719; Paul Flick <pflick@aecap.net> to PPP Forgiveness <pppforgiveness@acclivityfinancial.com>: "Thanks for the update!"

03/08/2021 at 1738; pppforgiveness@acclivityfinancial.com to pflick@aecap.net: "Of course! There is absolutely no rhyme or reason to when submissions get approved. mike Mike Callaghan SVP, Director of Technology"

52.     03/08/2021 at 1719; Paul Flick <pflick@aecap.net> to PPP Forgiveness <pppforgiveness@acclivityfinancial.com>: "Government!! Thanks Mike!"

53.     04/01/2021 at 1354; Paul Flick <pflick@aecap.net> to PPP Forgiveness <pppforgiveness@acclivityfinancial.com>: "Mike, I hope you and yours are doing well. Any

progress on the forgiveness of the PPP loan? Thanks for helping! Have a great Easter weekend! Paul Flick Premium Service Brands CEO O: 703.622.0109 www.premiumservicebrands.com"

54.     On March 31, 2021, a payoff payment in the amount of $509,970.71 was deposited in forgiveness of the AE Capital loan. The increased amount in the loan payoff payment is attributed to an interest payment of $4,715.71. That interest payment, when added to the original loan amount of $505,255.00, equals the forgiven amount of $509,970.71.

<u>Use of the TARGET ACCOUNT to send Wires</u>

55.     Both Premium Service Brands and AE Capital PPP Loan applications were submitted by electronic means. Bank of America sent an email prompting members to complete a PPP Loan application which required all applications and supporting documents be submitted through a client's online account.  Citizens Bank initiated applications through the use of DocuSign and corresponded with Flick by email.

56.     Based on the above information, there is probable cause to believe that Paul Flick used the email addresses pflick@premiumservicebrands.com (TARGET ACCOUNT) and pflick@aecap.net to complete, sign, and submit duplicative and therefore fraudulent material in support of PPP loans for Premium Service Brands and AE Capital, in possible violations of Title 18 U.S.C §§ 1343 (wire fraud). Based on the email correspondence initiated by Paul Flick on February 5, 2021,there is further probable cause to he continued to use these email accounts to perpetuate violations of Title 18 U.S.C §§ 1343 in order to obtain loan forgiveness from the

banks. Therefore, there is probable cause to believe that the TARGET ACCOUNT will contain evidence of the crimes set forth above.

## BACKGROUND CONCERNING GOOGLE[2]

57.     Google is a United States company that offers services to the public through its Google Accounts, a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

58.     In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

59.     Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

---

[2]     The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages: the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

60.     Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

61.     Google provides email services (called Gmail) to Google Accounts through email addresses at gmail.com or enterprise email addresses hosted by Google.  Gmail can be accessed through a web browser or a mobile application.   Additional email addresses ("recovery," "secondary," "forwarding," or "alternate" email addresses) can be associated with the Google Account by the user.  Google preserves emails associated with a Google Account indefinitely, unless the user deletes them.

62.     Based on my experience and understanding, Google provides services for business email accounts, called Enterprise Accounts. These accounts offer increased functionality and controls for business owners. In the case of enterprise accounts, Google typically requires the government request preservation or serve legal process directly from/to the enterprise. Premium Service Brands is an enterprise account. Typically, Google requires that law enforcement directly contact the enterprise account holder to serve legal process. Google requires that if the government cannot contact the enterprise directly, they must explain the reasons and factual circumstances why law enforcement cannot do so and why an appropriate official at the enterprise cannot be notified. I have notified Google and provided them with the factual circumstances of the investigation and Google acknowledged the factual circumstances and preserved records associated to pflick@premiumservicebrands.com.

16

63.     Google Drive is a cloud storage service automatically created for each Google Account. Users can store an unlimited number of documents created by Google productivity applications like Google Docs (Google's word processor), Google Sheets (Google's spreadsheet program), Google Forms (Google's web form service), and Google Slides (Google's presentation program). Users can also upload files to Google Drive, including photos, videos, PDFs, and text documents, until they hit the storage limit. Users can set up their personal computer or mobile phone to automatically back up files to their Google Drive Account. Each user gets 15 gigabytes of space for free on servers controlled by Google and may purchase more through a subscription plan called Google One. In addition, Google Drive allows users to share their stored files and documents with up to 100 people and grant those with access the ability to edit or comment. Google maintains a record of who made changes when to documents edited in Google productivity applications. Documents shared with a user are saved in their Google Drive in a folder called "Shared with me." Google preserves files stored in Google Drive indefinitely, unless the user deletes them.  Android device users can also use Google Drive to backup certain data from their device. Android backups on Google Drive may include mobile application data, device settings, file downloads, and SMS messages.

64.     Google integrates its various services to make it easier for Google Accounts to access the full Google suite of services. For example, users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout, Meet, and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If

someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. Google Voice voicemail transcripts and missed call notifications can be sent to a user's Gmail account. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

65.     When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

66.     Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

67.     Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a

communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

68.     In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. For example, email messages sent, received, and saved; and any content that Paul Flick or other individuals made regarding the activity (which may, in turn show their state of mind in connection with the offenses under investigation).

69.     Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.   Thus, stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation. For example, the emails may contain the names and email addresses of individuals communicating with Flick in furtherance of the offenses under investigation.

70.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time.

19

As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

71.    Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.,* information indicating a plan to commit a crime), or consciousness of guilt (*e.g.,* deleting account information in an effort to conceal evidence from law enforcement).

72.    Other information connected to the use of a Google account may lead to the discovery of additional evidence. For example, the apps downloaded from the Google Play store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

73.    Google's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Google services to receive, send, and/or upload documents in connection with the offenses under investigation. In my training and experience,

such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## ACCOUNT PRESERVATION

74.     On November 9, 2022, a preservation request was submitted to Google, which asked Google to preserve all records associated with entities and email addresses attributed to the domains @premiumservicebrands.com to include, pflick@premiumservicebrands.com.

75.     On April 24, 2022, a preservation request was sent to GoDaddy, LLC requesting that all records associated to email address, pflick@aecap.net and website, aecap.net, be preserved.

## CONCLUSION

76.     Therefore, based on the information above, I respectfully submit there is probable cause to believe that the Target Account was used to facilitate and commit violations of Title 18 U.S.C §§ 1343 (wire fraud) and that a search of the information described in Attachment A will reveal the items described in Attachment B, which are evidence, fruits, and instrumentalities of violations of the same. Therefore, I respectfully request that the Court issue the proposed search warrant.

77.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Google.  Because the warrant will be served on Google, who will then

compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## **REQUEST FOR SEALING**

78.     It is respectfully requested that this Court issue an order sealing, until further order of this Court, all papers submitted in support of this application, including the application, affidavit, and search warrant, and the requisite inventory notice.  Sealing is necessary because the items and information to be seized are relevant to an ongoing investigation, the extent of which is neither public nor known to all of the targets of the investigation.  Premature disclosure of the contents of this Affidavit and related documents may jeopardize the effectiveness of the investigation, including by giving targets an opportunity to flee, destroy or tamper with evidence, change patterns of behavior, and/or notify confederates.

## **OATH**

The information in this affidavit is true to the best of my knowledge and belief.

Respectfully submitted,

 /s/Mark Ericksen
Mark Ericksen, Special Agent
Federal Bureau of Investigation

Received by reliable electronic means and sworn and attested to by telephone on this ___7th___ day of June 2023.


_____
Honorable Joel C. Hoppe
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with pflick@premiumservicebrands.com ("the Account") that is stored at premises owned, maintained, controlled, or operated by Google LLC, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

# ATTACHMENT B

## Particular Things to be Seized

**I.      Information to be disclosed by Google LLC ("Google")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on November 9, 2022, and renewed on February 8, 2023, Google is required to disclose to the government for each account or identifier listed in Attachment A the following information from January 1, 2018  to May 1, 2023, unless otherwise indicated:

a.      All business records and subscriber information, in any form kept, pertaining to the Account, including:

1.      Names (including subscriber names, user names, and screen names);

2.      Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

3.      Telephone numbers, including SMS recovery and alternate sign-in numbers;

4.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

5.      Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers

6.      Length of service (including start date and creation IP) and types of service utilized;

7.  Means and source of payment (including any credit card or bank account number); and

8.  Change history.

b.  All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

c.  Records of user activity for each connection made to or from the Account(s), including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs;

d.  The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email; the size, length, and timestamp of each email; and true and accurate header information including the actual IP addresses of the sender and recipients of the emails;

e.  The contents of all records associated with the account in Google Drive (including Docs, Sheets, Forms, and Slides) and Google Keep, including: files, folders, media, notes and note titles, lists, applications, and other data uploaded, created, stored, or shared with the account including drafts and deleted records; third-party application data and backups; SMS data and device backups; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, other Google service (such as Google Classroom or Google Group), or third-party application associated with each record; and all associated logs, including access logs and IP addresses, of each record.

Google is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

II.     **Information to be seized by the government**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

b.      All location data, whether derived from Global Positioning System (GPS) data, cell site/cell tower triangulation/trilateration, and precision measurement information such as timing advance or per call measurement data, and Wi-Fi location, including the GPS coordinates and the dates and times of all location recordings, for the **time period** described in Attachment A;

c.      All images, videos, or other files containing the integrated or embedded location data reflecting that the file was created during the **time period** described in Attachment A;

d.      The types of service utilized.

In addition, for any Google accounts linked to the accounts or identifiers listed in Attachment A by HTTP cookies, recovery email address, or telephone number, the Provider is required to disclose all records or other information regarding the identification of the account, to

include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number).

4